UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JOHN FUCHS, ANTHONY MACAGNONE, DAVID
HAINES, MICHAEL CONROY, GEOFFREY JAMES,
PATRICK MORIN, WILLIAM MACCHIONE, WALTER
KRUPA, ALAN EHL, WILLIAM WEITZMAN, JAMES         MEMORANDUM
MALCOLM, JOSEPH OLIVIERI, ARTHUR GODSELL,        OPINION AND
ROBERT CARLINO, PAUL O'BRIEN, JOSEPH GANIRO,     ORDER
ROSS PEPE, RICHARD O'BEIRNE, and DONALD
STUHLMILLER and JAMES LOGAN, as Trustees of the  CV 04-1555 (ETB)
EMPIRE STATE CARPENTERS WELFARE, PENSION
VACATION, ANNUITY, SCHOLARSHIP, LABOR-
MANAGEMENT COOPERATION and CHARITABLE
TRUST FUNDS,

                                      Plaintiffs,

    – against –

CRISTAL CONCRETE CORP., and CRISTAL
CONSTRUCTION & DEVELOPMENT CORP.,

                                      Defendants.
-----------------------------------------------------------------------X

      Plaintiffs, the Trustees of the Empire State Carpenters Welfare, Pension, Vacation, Annuity, Scholarship, Labor-Management Cooperation and Charitable Trust Funds ("plaintiffs" or the "Trustees") have brought this action pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132 and 1145, and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. The plaintiffs allege that defendant Cristal Concrete Corp. ("Cristal Concrete") failed to pay employee benefit contributions pursuant to a series of collective bargaining agreements ("CBA" or "Agreement") between the Empire State Regional Council of Carpenters (the "Union") and Cristal Concrete. The plaintiffs further allege that, although second defendant Cristal Construction & Development

1

Corp. ("Cristal Construction") was not a signatory to the CBA, Cristal Construction is bound by the agreement and liable to the Funds for unpaid contributions under the "single employer doctrine" and/or the "alter ego doctrine." Plaintiffs also allege that defendants violated the CBA provisions prohibiting the formation of a "double breasted operation." The plaintiffs seek: (1) an order declaring that Cristal Concrete and Cristal Construction are a single employer; (2) an order awarding damages for improperly unreported and/or unpaid fringe benefit contributions to the Funds; (3) $171,371.89 in damages from the defendants as well as interest, liquidated damages equal to either twenty percent of the principal unpaid contributions or the amount of interest, whichever is higher, costs, disbursements, and reasonable attorneys fees; (4) leave to conduct audits of the defendants' financial records; (5) an order directing the defendants to comply with the terms of the collective bargaining agreement; and (6) any other relief that the Court deems appropriate. (Pls.' Compl. ¶¶ a-j.)

The defendants argue that they paid all monies due to the Funds in accordance with the collective bargaining agreement. (Defs.' Pre-Trial Statement ¶ 1.) Defendants also argue that the plaintiffs are seeking contributions on behalf of employees who were not doing the type of work covered by the collective bargaining agreement. (Id.) Finally, defendants argue that plaintiffs are seeking contributions in the absence of a written agreement requiring contributions. (Id.)

The Court held a bench trial on October 24, 2005, at the end of which the defendants moved for dismissal of this action. The defendants called no witnesses and offered no evidence in support of their defense. The Court reserved judgment pending the submission of post-trial briefs. This Memorandum Opinion and Order constitutes the findings of fact and conclusions of

law, pursuant to Rule 52 of the Federal Rules of Civil Procedure.

I.     BACKGROUND

     A.     Findings of Fact

Defendants Cristal Concrete and Cristal Construction are both in the construction business. Cristal Concrete's chief executive officer is Paul Bevacqua, and the company's mailing address is 1026 Main Street, Holbrook, New York 11741. (Pls.' Ex. 18 at 7.) Cristal Construction's chief executive officer is Anthony Spillabotte, and the company's mailing address is 1024 Main Street, Holbrook, New York 11741. (Pls.' Ex. 19 at 7.)

The plaintiffs are fiduciaries of employee benefit plans (the "Funds") governed by ERISA as defined by Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A). The Funds are employee benefit plans within the meaning of ERISA, 29 U.S.C. § 1002(3), and are maintained pursuant to the terms of collective bargaining agreements ("Agreement" or "CBA") between the United Brotherhood of Carpenters and Joiners of America, Empire State Regional Council of Carpenters (the "Union") and various employers who are required to make contributions to the Funds on behalf of their employees. The Funds are operated pursuant to the terms of the collective bargaining agreement and an Agreement and Declarations of Trust (the "Trust Agreement") incorporated into the collective bargaining agreement by reference. (Pls.' Ex. 5, Art. VII.) The Trust Agreement sets forth the rules under which the Funds are administered. (Id.)

The parties do not dispute that defendant Cristal Construction never signed any agreement with the Union. Defendant Cristal Concrete, on the other hand, signed several agreements with

3

the Union. On April 27, 1999, Cristal Concrete entered into a "one job" agreement with the Union to construct a Modell's in Bay Shore (the "Modell's one job agreement"). (Pls.' Ex. 1.) The Modell's one job agreement specified that it incorporated fully by reference the Union's collective bargaining agreement and trust agreements in effect at the time. (Id.) Similarly, on April 11, 2001, Cristal Concrete entered into another "one job" agreement with the Union for the construction of a King Kullen grocery store in Manorville, New York (the "King Kullen one job agreement"). (Pls.' Ex. 2.) The King Kullen one job agreement also specified that it incorporated fully by reference the Union's collective bargaining agreement and trust agreements in effect at the time. (Id.)

At some point between April 11, 2001 and October 11, 2001, Cristal Concrete also executed a "compliance form" agreement which stated that Cristal Concrete "acknowledges the existence of a current collective bargaining relationship and agreement with [the Union] and agrees to be bound by a new agreement with [the Union] covering the period July 1, 1999 through June 30, 2002 embodying all the terms and conditions contained in the collective bargaining agreement . . . ." (Pls.' Ex. 3; see also Transcript of Trial, before Judge Boyle, dated Oct. 24, 2005 ("Transcript"), at 54, 65-66.)

On June 26, 2002, the Union contacted Cristal Concrete in writing in order to obtain said defendant's financial records for the purpose of conducting an audit of Cristal Concrete's payments to the Funds during the preceding three-year period, as provided for in the collective bargaining agreement. (Pls.' Ex. 6.) Cristal Concrete did not respond. (Tr. at 28.) Several months later, by a letter dated November 12, 2002, plaintiffs' counsel notified Cristal Concrete of its breach with respect to the submission of financial records for an audit under the CBA, and

4

informed Cristal Concrete that the Trustees were "authorized to file" a complaint in federal court in the absence of compliance. (Id.) Plaintiffs filed the complaint in this action on April 14, 2004.

B.   Testimony

   1.   Alan Ehl's testimony

Alan Ehl, the Union's regional director on Long Island (hereinafter "Ehl"), testified that at some point between when Cristal Concrete signed the two "one job" agreements with the Union (which were in effect for the duration of the jobs) and when it signed the "compliance form" agreement, Cristal Concrete signed a collective bargaining agreement for the period October 1996 to June 30, 1999.[1] (Tr. at 18, 20-1.) Ehl testified that the collective bargaining agreement for the period October 1996 to June 30, 1999, admitted as plaintiffs' Exhibit 4, is the agreement fully incorporated by reference in the Modell's one job agreement signed by Cristal Concrete on April 27, 1999. (Id. at 24-5.) Similarly, Ehl testified that the collective bargaining agreement for the period July 1, 2000 through April 30, 2004, admitted as plaintiffs' Exhibit 5, is the agreement fully incorporated by reference in the King Kullen one job agreement signed by Cristal Concrete on April 11, 2001. (Id.) Ehl testified that there was not a separate collective bargaining agreement in existence covering the one-year period between June 30, 1999 and July 1, 2000, due to union mergers and work rule negotiations. (Id. at 58-59.) Ehl testified, however,

---

[1] Ehl's explanation for not offering a signed copy of the agreement into evidence was that he doesn't normally take signed papers out of the office. (Tr. at 20.) Defendants' counsel initially raised an objection to the plaintiffs' submission of copies as evidence without laying a proper foundation. At a later point during the trial, however, the parties stipulated to the truth and accuracy of the agreements, and defendants' counsel withdrew his objection with respect to admissibility.

that this year-long gap was filled by a clause in the collective bargaining agreement covering the period from October 1996 through June 30, 1999. (Id. at 59.) The clause provides that the agreement shall remain in effect through June 30, 1999, and unless at least 60 days' notice of an intent to modify or terminate the agreement is given prior to that date, the agreement shall remain in effect for a further period of one year. (Id.; see Pls.' Ex. Art. XXI.)

According to Ehl's testimony, when an employer signs any one of the Union's contracts, it is given a "rate sheet" which sets forth the hourly wage for each category of employee. Ehl testified that regardless of the nature of the duties performed, a member of a certain union gets paid according to the rates for that union as set out in the wage sheet and listed in the collective bargaining agreement. (Tr. at 157.) Thus, for example, even if a union carpenter performs masonry work on a job, he still must be paid at the union carpenter rate. (Id. at 158.) The CBA explicitly states that carpenters cannot be paid any less than the rate of compensation stated within it. (Pls.' Ex. 5, Art. VI.) Ehl stated that it is part of his job to oversee the agents in the field who ensure that the union employees get paid the proper rate. (Tr. at 158-59.)

Ehl also testified that the rate sheet breaks down the amounts that the employer is required to pay into the benefit funds for each employee hour worked. (Id. at 30; see also Pls.' Exs. 9A, 9B, 10, 11.) Based on the amount of their benefit contributions, the employees purchase "stamps" that they use to redeem their benefits. (Tr. at 48-49.) Ehl testified that Cristal Concrete purchased fringe benefit contribution stamps for employees in accord with the Union's rate sheets and the terms set forth in the CBA. (Id. at 37-38, 48-49.)

Ehl further testified that pursuant to the terms of the collective bargaining agreement, the Union conducts one audit of each signatory contractor during the lifetime of that employer's

contract with the Union. (Id. at 26.) In the event that an employer fails to comply with the audit request, the Union will "send a demand letter" to that employer. (Id. at 27-8.) If that endeavor is unsuccessful, the Union will refer the matter to its attorneys. (Id..) When presented with plaintiffs' exhibits 6 and 7, Ehl identified them as the demand letters that the Union and its attorneys sent to Cristal Concrete in the wake of that defendant's failure to respond to the Union's requests for financial records. (Id. at 28-29.)

  2. Stephen Bowen's Testimony

Stephen Bowen ("Bowen") testified that he is the payroll audit manager for Schultheis & Panettieri (hereinafter "S & P"). (Id. at 73.) Bowen explained that, as the payroll audit manager, he "oversee[s] the staff of payroll auditors, who conduct payroll audits for various benefit funds." (Id.) Bowen testified that S & P conducts payroll audits to ensure that employers pay the Funds according to the terms expressed in the CBA. (Id.) S & P audited defendant Cristal Concrete in February 2003. By comparing the total payroll hours for Cristal Concrete's employees with the total stamp purchases and stamp redemptions, the auditors found a deficiency in the amount of $171,371.89. (Id. at 75-77; Pls.' Ex. 8 at 2.) Bowen testified that $171,371.89 represents the dollar amount due in benefits for the hours that were not reported to the Funds for the purpose of benefits. (Id. at 77.) The defendants offered no evidence in support of their argument that they made payments according to the terms of the collective bargaining agreement, and Bowen's testimony is credited as to the existence of a deficit of $171,371.89 in funds due and owing to plaintiffs.

Bowen also testified that although Cristal Concrete refused to provide the auditors with

7

its disbursement journal, the auditors obtained pay stubs from Cristal Concrete employee Rigoberto Santos ("Santos") indicating that paychecks were issued to Santos by both Cristal Concrete and Cristal Construction. (Id. at 79; Pls.' Exs. 12, 15.) The pay stubs indicate that during the period from January 1999 through December 2001, defendant Cristal Concrete compensated Santos at an hourly rate of $31.08, while defendant Cristal Construction paid Santos $22.00 per hour for work performed during the same pay period. (Pls.' Exs. 12, 15.) Bowen's testimony on this point is also credited.

3. Rigoberto Santos's Testimony

At trial, Santos testified that, in 1999, he was employed by defendant Cristal Concrete. (Tr. at 131-32.) Santos testified that while he was employed by Cristal Concrete he was not aware of a company known as Cristal Construction. (Id. at 134.) Santos testified that he is a member of the Local 7 carpenter's union, and that he performed carpentry work and general labor on the Modell's and King Kullen projects while in the employ of Cristal Concrete. (Id. at 137-139.) Upon review of his pay stubs, Santos testified that he was paid at a rate of $31.08 for carpentry work, and $22.00 per hour for labor. (Id. at 142.) Santos testified that he was not, however, a member of the laborers' union, that he was working as a carpenter, even when doing work that was more akin to masonry or general labor. (Id. at 142, 152.) He stated that he "would get paid for certain things in one way and for certain things in another way," and did not really understand why, but when he asked why he received different rates of pay for carpentry work, he was never given an explanation. (Id. at 143-44.) Santos testified that he did not agree to be compensated at a rate less than the Union rate for carpenters. (Id. at 151.)

Santos identified the boss of Cristal Concrete as "big Paul" (Paul Bevaqua is the CEO of

8

Cristal Concrete), who also had men known as "Bobby" and "Al" working as high ranking officials in the company. (Id. at 132.) Santos also identified his work supervisors or foremen as "Paul, Anthony, and Dougie." (Id. at 135-139.)[2] He could not identify the last names of most of the individuals involved. (Id. at 135-136; 139.) He did, however, believe that "Anthony" was Anthony Spillabotte (who is the CEO of Cristal Construction), and stated that Anthony was the son of Al and the brother of Bobby. (Id. at 135, 144.) Additionally, he stated that "big Paul" was the father-in-law of Paul the supervisor. (Id. at 135.) Santos's testimony is credited.

## II. DISCUSSION

### A. Recovery of Delinquent Benefit Contributions from Signatory to CBA

#### 1. Existence of an Effective Collective Bargaining Agreement

Section 515 of ERISA states that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

ERISA limits employer liability to the "promised contributions" based on a current collective bargaining agreement. Laborers Health and Welfare Fund for Northern California v. Advanced Lightweight Concrete Co., 484 U.S. 539, 108 S. Ct. 830, 835-836, 98 L. Ed. 2d 936 (1988). ERISA also provides federal jurisdiction over claims brought to force an employer to make the obligatory contributions. See 29 U.S.C. § 1132(f); Greenblatt v. Delta Plumbing & Heating Corp., 68 F.3d 561, 568 (2d Cir. 1995).

---

[7]Dougie was also referred to throughout the trial as Doug. (See Tr. at 139.)

Claims arising out of Section 301 of the LMRA must also stem from an effective collective bargaining agreement. See 29 U.S.C. § 186; United Automobile, Aerospace and Agricultural Implement Workers of America, Local 33 v. R.E. Dietz Co., 996 F.2d 592, 595 (2d Cir. 1993). Section 301(a) of the LMRA states that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship fo the parties.

29 U.S.C. § 185(a).

It is therefore essential that there be an effective collective bargaining agreement during the period relevant to the current action. Brown v. Dominic Prisco Transport, Inc., No. CV 95-1121, 1997 WL 1093463 at *3 (E.D.N.Y. Aug. 16,1997). A finding that a collective bargaining agreement exists during the relevant time period is critical to the question of whether the defendants were obligated to make contributions to the Funds. Id.

Here, the parties do not dispute that Cristal Concrete was a party to a "one job" agreement signed on April 27, 1999, and a "one job" agreement signed on April 11, 2001. Cristal Concrete argues that it was not bound by collective bargaining agreements during the time periods for which plaintiffs seek to recover contributions. (Defs.' Post-Trial Brief at 4-6.) However, both "one job" agreements signed by Cristal Concrete incorporated by reference the Union's collective bargaining agreement in effect at the time, which were agreements effective from October 1996 through June 30, 1999, and July 1, 2000 through April 30, 2004, respectively. Although there was not a separate collective bargaining agreement in existence

10

covering the one-year period between June 30, 1999 and July 1, 2000, this year-long gap was filled by a clause in the collective bargaining agreement covering the period from October 1996 through June 30, 1999, which Cristal Construction was bound to by virtue of signing the "one job" agreement dated April 27, 1999. The clause provides that the agreement shall remain in effect through June 30, 1999, and unless at least 60 days' notice of an intent to modify or terminate the agreement is given prior to that date, the agreement shall remain in effect for a further period of one year– in this case, through June 30, 2000.

Accordingly, plaintiffs have succeeded in demonstrating the existence of effective collective bargaining agreements during the time periods relevant herein.

### 2. Burden of Proof for Claims of Inadequate Contributions

After demonstrating the existence of effective collective bargaining agreements, in order to succeed on their claims, the Funds must establish a prima facie case by demonstrating that the employer's contributions are inaccurate. Local 282 Welfare Trust Fund v. A. Morrison Trucking, Inc., CV 92-2076, 1993 WL 120081, at * 1 (E.D.N.Y. March 30, 1993) (citations omitted). Once the Funds produce evidence that raises genuine questions as to the employer's records, the burden shifts to the employer to provide evidence as to the amount of work performed, or evidence regarding the inaccuracy of the assumptions made during the audit. Id. (observing that the burden shifts because ERISA places a duty on the employer to keep accurate records of the hours employees work, citing 29 U.S.C. § 1059(a)(1)).

Here, the Funds submitted testimonial and documentary evidence which demonstrated that Cristal Concrete's contributions were inaccurate. The defendants failed to produce any evidence that raised a genuine question as to the accuracy of the audit or Bowen's testimony.

11

Accordingly, the plaintiffs have succeeded in demonstrating that Cristal Concrete's contributions to the Funds were deficient.

B. <u>Theories of Liability to Recover Contributions from Non-Signatory to CBA</u>

1. <u>Single Employer Doctrine</u>

Plaintiffs acknowledge that Cristal Construction was not a signatory to a CBA, but argue that Cristal Construction should be held liable under the CBA pursuant to the single employer doctrine. The single employer doctrine applies when "'separate corporations are not what they appear to be, that in truth they are but divisions or departments of a single enterprise.'" <u>Clinton's Ditch Coop. Co., Inc. v. NLRB</u>, 778 F.2d 132, 137 (2d Cir. 1985), <u>cert. denied</u>, 479 U.S. 814, 107 S. Ct. 67, 93, L.Ed.2d 25 (1986) (quoting <u>NLRB v. Deena Artware, Inc.</u>, 361 U.S. 398, 402, 80 S. Ct. 441, 4 L.Ed.2d 400 (1960)). In other words, two companies are a single employer "if there is an 'absence of an arm's length relationship found among unintegrated companies.'" <u>LaBarbera v. C. Volante Corp.</u>, 164 F. Supp. 2d 321, 325 (E.D.N.Y. 2001) (quoting <u>Lihli Fashions Corp</u>, 80 F.3d at 747-48). The Supreme Court has set forth a four-factor test to determine whether two companies are a single employer. <u>Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.</u>, 380 U.S. 255, 256, 85 S. Ct. 876, 877, 13 L.Ed.2d 789 (1965). The test specifically looks at the companies' interrelation of operations, common management, centralized control of labor relations and common ownership. <u>Id.</u> In addition to these four factors, the presence of common office facilities and equipment, as well as the existence of family connections among the businesses, may also be considered when determining single employer status. <u>See LaBarbera</u>, 168 F. Supp. 2d at 325 (citing <u>Radio &</u>

Television Broadcast Technicians, 380 U.S. 255). To make a finding of single-employer status, it is not necessary for all of the factors to be present, and no one factor is more important than another. Lihli Fashions Corp, 80 F.3d at 747. What is key to determining single employer status is finding that the companies do not conduct business dealings at arm's length, as they would be if they were not closely related to each other. Id.

In this case, Cristal Concrete and Cristal Construction meet the requirements of the single employer test. Both companies were in existence at the same time and performing the same services. Bricklayers and Allied Craftworkers Local 2 v. C.G. Yantch, Inc., 316 F. Supp.2d 130, 143 (N.D.N.Y. 2003) (quoting Newspaper Guild of N.Y. Local No. 3 v. NLRB, 261 F.3d 291, 303 (2d Cir. 2001)). Although the incorporation documents filed with the state for each company suggest that they have different ownership, the companies' interactions and interrelated operations support the conclusion that they are a single employer. See Bourgal v. Robco Contracting Enterprises, Ltd., 969 F. Supp. 854, 858 (E.D.N.Y. 1997) (holding that companies formed at different times with different offices and different function, yet owned by a husband and wife, were a single employer). Both Cristal Concrete and Cristal Construction are in the same business of doing construction and have fully integrated operations. See Brown v. Sandimo Materials, 250 F.3d 120, 123 (2d Cir. 2001) (holding that a series of interrelated companies that all haul building materials are a single employer); Newspaper Guild of New York, Local No. 3 v. NLRB, 261 F.3d 291, 299 (2d Cir. 2001) (citing NLRB cases in which businesses have been decided to have the same purpose). Both companies were working on the same jobs and paying the same employees, as if they were actually one employer. Bricklayers and Allied Craftworkers Local 2, 316 F. Supp. 2d at 143 (holding that companies are a single

employer when they have a relationship where one company regularly provides labor for the projects of another, with reciprocation by the other company, and all the labor involved is related to only these two companies); <u>Bourgal</u>, 969 F. Supp. at 857 (holding that companies which have shared employees and are paying these employees at the same time are a single employer). The companies employed the same managers and supervisors, with complex familial and personal relationships present at the uppermost offices of the companies. See <u>Brown v. Sandimo Materials,</u> 250 F.3d 120, 124 (2d Cir. 2001) (holding that two companies which share complex familial relationships are a single employer). This establishes a link between the two companies in terms of their management as well as their control of labor relations. See <u>Brown v. Dominic Prisco Transport, Inc.</u>, No. CV 95-1121, 1997 WL 1093463, at * 4 (E.D.N.Y. Aug. 16, 1997) (holding that companies with the same owners and business officers are a single employer). In addition, the companies' office spaces are situated next to one another on the same street. (Pls.' Exh. 12, 15). These companies lack arm's length dealings with one another, which also supports a finding that they are a single employer. See <u>Lihli Fashions Corp., Inc. V. NLRB</u>, 80 F.3d 743, 747-748 (2d Cir. 1996); <u>King v. Unique Rigging Corp.,</u> No. CV 01-3797, 2005 WL 2290585, at * 2 (E.D.N.Y. Sept. 20, 2005).

     a.    <u>Appropriate Employee Bargaining Unit</u>

Critically however, "the determination that separate companies are a 'single employer' is not enough to bind all the separate companies to the collective bargaining agreements of any one of the companies." <u>Lihli Fashions Corp., Inc. v. NLRB</u>, 80 F.3d 743, 747-48 (2d Cir. 1996). As the Supreme Court held in <u>South Prairie Construction Co. v. Local No. 627</u>, 425 U.S. 800, 96 S. Ct. 1842, 48 L. Ed. 2d 382 (1976) (per curiam), when two entities are found to be a single

14

employer, for one company to be bound by a collective bargaining agreement made by another company it must be shown in addition that together the companies represent an appropriate employee bargaining unit. Lihli Fashions Corp., 80 F.3d at 747-48 (citing South Prairie Construction Co. 425 U.S. 800 at 804-05). The purpose of this requirement is to protect the rights of the non-union employees to representatives of their choice, or not to have union representation at all, since binding the employer necessarily affects its employees' rights. LaBarbera v. C. Volante Corp., 164 F. Supp. 2d 321, 326 (E.D.N.Y. 2001) (citing Local One Amalgamated Lithographers of America v. Stearns & Beale, Inc., 812 F.2d 763, 769-70 (2d Cir. 1987)).

In determining whether or not an appropriate bargaining unit exists, "attention 'shifts from the control, structure and ownership of the employer to the community of interests of the employees.'" LaBarbera v. C. Volante Corp., 164 F. Supp. 2d 321, 326 (E.D.N.Y. 2001) (quoting Cuyahoga Wrecking Corp. v. Laboreres Int'l Union of North America, Local Union #210, 644 F. Supp. 878, 882 (W.D.N.Y. 1986)). Eight factors are relevant in making this determination: "geographic proximity, similarity of skills and functions, similarity of employment conditions, centralization of administration, managerial and supervisory control, employee interchange, functional integration of the employer, and bargaining history." C. Volante Corp. 164 F. Supp. 2d at 326.

Based on the factors set forth in C. Volante Corp., Cristal Concrete and Cristal Construction together represent an appropriate bargaining unit. As discussed supra, Cristal Concrete has at least two of the same employees as Cristal Construction. The companies' offices are located next door to one another, and the companies require the same skill sets and treat the

15

employees the same. The companies also appear to have centralized administration, managerial and supervisory control over their employees, and the companies' employees are freely exchanged to the point where the employees are unaware of which company they are working for at what time. Under these facts, the plaintiffs have established that the employees of Cristal Concrete and Cristal Construction share a "community of interest." See King v. Unique Rigging Corp., No. CV 01-3797, 2005 WL 2290585, at * 3 (E.D.N.Y. Sept. 20, 2005) (finding the existence of an appropriate bargaining unit where employees of the two companies were based at the same location, drove the same vehicles when performing work for either company, and were both supervised by the same person); C. Volante Corp. 164 F. Supp. 2d at 326 (finding the existence of an appropriate bargaining unit where the companies exchanged employees, the employees performed the same job for both companies, and the working conditions were the same at both companies).

Based on the foregoing, I find that Cristal Concrete and Cristal Construction together represent an appropriate bargaining unit, and are a single employer such that both companies can be held liable for the obligations pursuant to the collective bargaining agreement signed by Cristal Concrete.

2. Alter Ego Doctrine

The alter ego doctrine "'is designed to defeat attempts to avoid a company's union obligations. . . .'" Brown v. Dominic Prisco Transport, Inc., No. CV 95-1121, 1997 WL 1093463, at * 4 (E.D.N.Y. Aug. 16, 1997) (quoting Local One, Amalgamated Lithographers v. Stearns & Beale, Inc., 812 F.2d 763, 772 (2d Cir. 1987)). Although the factors used to determine alter ego liability are similar to those relevant to the determination of single employer status, the

16

main difference between the two doctrines is that the alter ego doctrine focuses on "the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations." Lihli Fashions Corp., 80 F.3d at 748 (citing Truck Drivers Local Union No. 807 v. Regional Import & Export Trucking Co., 944 F.2d 1037 (2d Cir. 1991)) (quoting Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc., 690 F.2d 489 (5th Cir. 1982), cert denied 464 U.S. 932, 104 S. Ct. 335, 78 L.Ed.2d 305 (1983)).  In addition, the alter ego doctrine usually applies when a new legal entity has replaced a unionized predecessor, whereas the single employer doctrine generally applies where the entities concurrently perform the same function and only one entity is a union employer.  Newspaper Guild of New York. 261 F.3d at 303 (affirming finding that single employer doctrine was inapplicable where the entities were not operated concurrently).  See also A&P Brush Mfg. Corp. v. NLRB, 140 F.3d 216, 219-221 (2d Cir. 1998) (applying alter ego doctrine where entities were not concurrently operated); Goodman Piping Products, Inc. v. NLRB, 741 F.2d 10, 11 (2d Cir. 1984) (per curiam) (same); C. Volante Corp., 164 F. Supp. 2d at 326-27 (holding that the single employer doctrine did not apply where the signatory company ceased operations before the non-signatory company was created).  "An employer found to be the alter ego of another is automatically responsible for the other's legal and contractual obligations under the labor laws."  Newspaper Guild of New York, Local No. 3 of the Newspaper Guild, AFL-CIO v. NLRB, 261 F.3d 291, 298-99 (2d Cir. 2001).  When determining if companies are alter egos of one another, key factors to consider are  "substantially identical management, business purpose, supervision, customers, and ownership."  Goodman Piping Prods., Inc., 741 F.2d at 11.

17

Here, Cristal Concrete and Cristal Construction meet some of the requirements for a finding that they are operating as alter ego companies. As discussed supra, they have the same business purpose and supervision. However, they do not share the same ownership, and plaintiffs failed to submit any evidence to show that the defendant companies share the same customers. Most importantly, however, is the fact that the companies are being operated concurrently. In such circumstances, the Second Circuit has held that the single employer doctrine should be applied in place of the alter ego doctrine. Newspaper Guild of New York, 261 F.3d at 303. Accordingly, the alter ego doctrine is inapplicable to the facts of this case.

   3.  Breach of Contract based on Existence of a Double-Breasted Operation

A double-breasted operation is one in which "one subcontractor operates a union company that bids on union contracts and a nonunion company that bids on nonunion contracts." Local One, Amalgamated Lithographers v. Stearns & Beale, Inc., 812 F.2d 763, 770 (2d Cir. 1987)); See also Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc., 690 F.2d 489, 497 n. 1 (5th Cir. 1982). The formation of a double-breasted operation is not a per se violation of ERISA or the LMRA, see King v. Galluzzo Equip. & Excavating, Inc., No. 00 CV 6247, 2001 WL 1402996, at * 12 (E.D.N.Y. Nov. 8, 2001), but may serve as the basis for an allegation that the operation is in fact a single employer or alter ego employer. Here, the plaintiffs allege a breach of contract action based on defendants' purported formation of a double-breasted operation. (See Pls.' Compl. ¶ 30, citing Section 3 of the CBA.)

However, "common-law contract claims relating to employee benefits are generally preempted by ERISA." Flanagan v. IDI Construction Co., Inc., 392 F. Supp. 2d 485, 488-89 (E.D.N.Y. 2005) (citing Devlin v. Transp. Communs. Int'l Union, 173 F. 3d 94, 101 (2d Cir.

18

1999)). Likewise, Section 301 of the LMRA also preempts most causes of action alleging breach of a collective bargaining contract between a union and employer. Willams v. Comcast Cablevison of New Haven, Inc., 322 F. Supp. 2d 177, 181-82 (D. Conn. 2004) (citing Allis-Chalmers Corp. v. Lucek, 471 U.S. 202, 210-11, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985) ("questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort")). While not every dispute that concerns a collective bargaining agreement is preempted by Section 301, claims that are "founded directly on the rights created by collective-bargaining agreements," that assert rights "derive[d] from the contract," or that are "inextricably intertwined with consideration of the terms of the labor contract" are preempted by Section 301. Willams, 322 F. Supp. 2d at 182 (citing Caterpillar. Inc. v. Willams, 482 U. S. 386, 390, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987); Allis-Chalmers Corp. v. Lucek, 471 U.S. 202, 213, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985)).

Here, the plaintiffs' breach of contract claims are based on provisions contained within Section 3 of the collective bargaining agreement, all of which prohibit the signatory employer from contracting or subcontracting with companies that are not signatories to a union agreement. (Pls.' Compl. ¶ 30, citing Section 3 of the CBA.) The claims, which are based on breach of the express terms of the agreement and are founded exclusively upon the rights and duties specified in the Agreement, fall with the scope of Section 301 preemption. Willams, 322 F. Supp. 2d at 182 (holding that plaintiff's breach of contract claims were preempted by Section 301 where they were clearly based on explicit provisions of a collective bargaining agreement).

Accordingly, plaintiffs' breach of contract claim is dismissed. <u>Greenblatt v. Delta Plumbing & Heating Corp.</u>, 68 F.3d 561, 572 (2d Cir. 1995) (stating that a common law claim must either be treated as a Section 301 claim or dismissed as pre-empted by federal labor-contract law).

## CONCLUSION

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that defendants Cristal Concrete and Cristal Construction are a single employer and that employees of Cristal Concrete and Cristal Construction represent an appropriate bargaining unit, such that Cristal Construction is liable for the duties under the collective bargaining agreements that bind Cristal Concrete;

IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED, that defendants Cristal Concrete and Cristal Construction are directed to pay to plaintiffs $171,371.89 in damages as well as interest, liquidated damages, costs, disbursements and reasonable attorney's fees.

Plaintiffs are directed to submit a proposed judgment, along with a detailed calculation of damages and contemporaneous time records supporting plaintiffs' request for attorney's fees, on notice to all parties within ten (10) days of the date of this Order.

SO ORDERED.

Dated: Central Islip, NY
       July 18, 2006

                              /s/ E. Thomas Boyle
                              E. THOMAS BOYLE
                              United States Magistrate Judge